Good morning, Your Honors. Tony Arjo for the Appellant at Constance Center. This case mainly focuses, as far as disability, on two different psychiatric opinions. I'd like to address those separately. One is the consulting opinion by Dr. Johnston. This opinion raises a problem that recurs to some time where the checklist source statement seems to, or at least possibly conflicts with the body of the report. The commissioner in this case, well, to go back a second, Dr. Johnston in his source statement essentially says that the center has no ability to work due to, well, the commissioner has conceded that the ALJ in this case does not address this medical source statement consisting of various checkoff boxes that seem to indicate that Ms. Center is disabled. Again, he doesn't even address this. They assert that this can be ignored because it seemingly is based on her subjective complaints alone. But if you look at this source statement, it was 101 in my excerpts, 277 in the transcript. It asks for an opinion based on medical history, clinical findings, treatment in response to prognosis. I'm sorry, where are you? What are you citing to the record? My excerpt of records was page 101. The transcript was 277. It's at the top, the instructions. So their consulting expert, following their own instructions, based this opinion on the history and the objective findings, the clinical findings, contrary to the commissioner's assertions that it was solely based on her subjective. Well, I'd like to ask you about some of the things that the ALJ relied on that Dr. Johnson said. He says Ms. Center fits no significant serious psychological diagnostic category. And then he goes on to say she seems to have been worn out by work and goes on to say perhaps moderately depressed at most. She expresses no interest in returning to work. Why couldn't the ALJ rely on those findings? Well, then Dr. Johnson goes on to say that she can't work based on the history. I would be surprised if she returns to work. Well, I'm talking about the checklist medical source statement says that she has poor, no useful ability to communicate. She can't complete a normal work day or work week. But if you look at what he's saying, she does not appear to want or believe in any such effort. I mean, the checklist thing is one thing, but there's those words as to what her attitude might fairly be described as malingering. Well, to the extent that he says that, it seemingly contradicts himself. I don't think he contradicts himself. He just doesn't check off some things. But he says flatly, at most moderately depressed. Correct. Yeah, he addresses the depression and the what he calls personality style with some traits that make her have a problem adjusting. He also seems to leave open the professional experience that people don't always demonstrate in a single setting what their actual condition is. And he knows that she tends to, by virtue of her personality, to try to cover up perhaps her emotional state. Yes, he brings that up in that on a good day, she may not appear as functionally impaired as she actually is. But I guess the point is, to the extent that you can read the body of the report as saying she's not so bad, it's contradicted seemingly by his checkoff saying she can't work. This is something that you can't work. Suppose we were to infer from that he means that she can't work because of the part that Judge Noonan pointed out, that he doesn't find her seriously depressed. But overall, his concluding statement that for all of the reasons laid out in his fairly extensive description, I would be surprised that she would return to work or cooperate with any rehabilitation service. And that's the most logical explanation of checking up the poor box, the ability to function. Does that, then, constitute sufficient evidence to show that she's in fact disabled? Yeah, I think it does. I think what Dr. Johnston is saying overall, if you look at some level of depression, her personality traits, her physical problems combined are going to keep her from working. I'm sorry, combined do what? Combined would prevent her from working. Well, the depression, her personality traits, and her physical problems combined would prevent her from sustaining work. The Senate needs to be resolved, you know, it's ALJ's duty, but ALJ doesn't address this seeming contradiction in this problem. Moving on to the other report of Dr. Ruiz, here the judge rejects it because there's no treating records from Dr. Ruiz. I think this is clearly a case where the judge had a duty to get these records if he thought... Wasn't there some doubt as to how long he'd been treating her? Well, he said that he saw her in 92 at the earliest after her husband died, and then saw Elise more recently. But this is something that could have been resolved if the judge had followed his duty to develop the record, that under the Smolin case, I mean, this is almost just like Smolin, if the ALJ needs these records to resolve the validity of the treating physician, he has a duty to get these records, especially where Ms. Center here was not represented. There's plenty of evidence that she has some level of depression. She's clearly not really that good at presenting herself or representing herself in these respects. So I think at the very least, the judge had a duty to request or subpoena the records of Dr. Ruiz to have an adequate record to decide whether this opinion, Dr. Ruiz's opinion, was supported or not. Do you want to reserve some time for a moment? Yes, I would like to. Okay. Thank you. Good morning, Your Honors. Peter Thompson appearing on behalf of the Commissioner. Your Honors, the appellant is raising an interesting point here regarding the check form of Dr. Johnston, which seems to be the sticking point in the adjudication of this matter. Your Honor, the check box form completed by Dr. Johnston is entirely consistent with Dr. Johnston's narrative. He says that she is not unable to work, but that she is not likely to cooperate with such an effort, or that she is not willing to work. It was interpreted that way by the ALJ. It was interpreted again that way by the district court. The check box form does not by itself contradict any of the narrative by Dr. Johnston on whom the ALJ relied. My problem with the ALJ is that I think he overreads Ruiz. I mean, he accuses him of having some tone in his analysis, which says she has a severe depression, and he selectively reads from Johnston, who I would agree is a very discursive and complete analysis. But Dr. Johnston makes the point that, based on what I see, it doesn't look as if she has severe depression. But I can't say Dr. Ruiz, who has more experience, is wrong. And he comes to a conclusion, which is she has this personality which she is quite focused on, that is Dr. Johnston is. And so one could come away with the conclusion that, as counsel mentioned, that a combination of these factors, including some level of depression, both psychiatrists agree she can't work. I mean, that's what he says at the end of the day. And the ALJ hasn't gone through any of this analysis for us, and he faults Dr. Ruiz for not having treatment notes. So I guess I'm left with the impression that the ALJ sort of decided to read Johnston very expansively in favor or against disability and diminish the evidence on a selective basis on the other side. So why should we sit here trying to resolve that when it's the ALJ's job to lay all this out and explain these inconsistencies? It is, Your Honor. It is the ALJ's job to do that. And I believe he did his job in this case regarding the resolution of these two medical reports. Regarding his own case. Kennedy, you've got the records from Dr. Ruiz? He could have, Your Honor. Absolutely, he could have. Well, the ALJ has more obligations than most administrative law judges have. Sure. Absolutely, Your Honor. And what I believe Your Honor is getting at is a duty to recontact. And that's what becomes interesting about this case. And the flaw, I believe, in the appellant's argument is it blurs the line between the ALJ's duty to develop the record, which absolutely exists here, no doubt about that, and an ALJ's duty to recontact a treating source, which is a subset of development of the record, but only required under very, very limited circumstances. In this case, the ALJ had discretion in how to develop the record. He certainly acknowledged his obligation to do so and arranged for two consultative examinations following the hearing. Well, the problem, though, is that under a case law, the treating physician's testimony and evidence is given considerable weight. And here the ALJ is rejecting Dr. Ruiz's, the treating physician's conclusion without, for reasons that appear that could have been resolved had he obtained all the records. Possibly, Your Honor. Yeah. But also, they were, I believe, adequately resolved by arranging for a second consultative examination. Furthermore ---- But how are they inconsistent on the bottom line? I mean, first of all, the consultative examination doesn't afford a basis for, by itself, for curing the defects and failure to fully explore what the treating physician's opinion was. That's maybe a point to address. But I guess I echo Judge Fisher's point. I don't see much difference in the bottom line. They both say she can't work. The difference seems to be that Dr. Ruiz says it's because of severe depression. And the consultative psychiatrist says, well, you know, I think she's got a moderate depression and she may not be willing to work. Exactly. He says he finds ---- But that's the only difference. They all agree she's not going to go back to work. He finds that she won't be, she's not likely to be successful because she's not motivated to work. I didn't say motivated. He just said that this is, we, she's the kind of applicant who often frustrates easy diagnosis or adjudication. She's capable of presenting a healthy picture on a good day and does not even represent herself well in the service of her disability claim. She may be too proud to accent the emotional. I'd be surprised if she returned to work life or cooperated with any rehabilitation service. That's correct. It's not a malinger. It's sort of a different, it seems to be presenting sort of a different case. Yeah. I don't believe he's talking about that she's malingering, as you say. I think what he's saying is that she's tired out. She's had some tough life circumstances and she's simply not likely to try to go back to work again, although I believe he's clear in saying that she doesn't, at least in any psychiatric impairments, do not result in any limitations on going back to work. It's more a result of her personality and a confluence of events. And while I agree that he did fill out the form saying that she would not succeed in maintaining a work schedule, it's not based on a medically determinable impairment, which is a requirement under the Social Security regulations. However, he, in order to reject the treating physician's conclusion that it was because of severe depression, we have to have some fairly clear and cogent reasons. And Dr. Johnston seems to be kind of equivocal about that, at least in reading it. I believe the my reading, Your Honor, is simply that Dr. Johnston was quite clear in saying that the problem here is one of life circumstance and motivation. It's not as a result of depression. But I believe the question for this Court is whether the ALJ could reasonably have read it that way. And if so, in the ALJ's job as the reconciler of evidence, if you will, I believe the opinion, the reading should be upheld on that basis. However, if I may address the treating records, I'll concede the ALJ could have gotten them. However, the ALJ isn't the only one who needs to develop the record here. And we're four years removed from the ALJ's decision. And the silence from the appellant's side of this as to their efforts to obtain them, or if they have obtained them, what they say, whether they support her case or not, is instructive to me. The ALJ isn't the only one who's supposed to develop the record here, Your Honor. Klamath is the one who comes in with the burden of proof. Kennedy. They're supposed to come back on appeal? You're saying they're supposed to supplement the record on appeal? Before the district court, in the Appeals Council, before the Appeals Council, after you see the ALJ's decision, there were many records submitted to the Appeals Council. When did she obtain an attorney? I'm sorry, Your Honor? When did she obtain an attorney in this case? Can you reflect on my recollection? It was after the Appeals. The letters to the Appeals Council are from her, from the appellant. So it's kind of hard to fault her for not developing the record. I certainly won't fault her for that. But I would look at the letters to the Appeals Council. They show that she does know that old records can and should be submitted, because that's what she did. And she used to be credited for that, for submitting, for going the extra mile and trying to develop her record. I've said what I think I need to say. If you have any questions, I'll do my best. No. Thank you for your presentation. Thank you. Thank you, Your Honor. Yeah. Thank you. Just a few quick points. Yeah. Ms. Sender was not represented until the district court. Did you represent her? At the district court level, I represented her. And why didn't you submit Dr. Rose's record? Well, it's difficult to get records in the district court. Under Sentence 6 of 405G, there has to be good cause. And then the only remedy is a remand for further proceedings under Sentence 6. So it's not just a matter that we get to open everything up again at the district court. Of course not. But you can, if the record's important enough, you want it in. I'm sure you've made those kinds of motions in other cases. I rarely do. If you get a sentence 6 remand, you know, you could be waiting for a hearing for another year. But anyway, without getting into that. Well, that's tactical. I mean, yeah. A point about the judge, ALJ, not having a duty to recontact Dr. Ruiz. Dr. Ruiz submitted a report. The ALJ never contacted Dr. Ruiz for a first time. When Ms. Sender requested the hearing, she reported that she was seeing Dr. Ruiz for mental problems. He never ordered records after the request for hearing. He never attempted contact after Ruiz, so after the report. So it wasn't a matter of recontacting. He never made any effort to get anything from Dr. Ruiz. It's difficult to do. How would you define the contours of a duty to recontact? I mean, that's a... I think first and foremost, if you're going to reject the report based on the fact that there's no accompanying records, the ALJ clearly has a duty to try to get the records before rejecting the report on that basis. Second, there's just a duty to have an adequate record to make your decision. And if you're deciding the psychiatric or the nature of the psychiatric impairment of this woman, especially an unrepresented woman, you need to have the treating records. You need to have an adequate basis to decide what's going on here. I mean, that's part of the ALJ's duty. And I think there's a number of cases that say that. I think I'll leave it there. Okay. Very good. All right. Thank you. The case is here to be submitted. Thank you.
judges: Noonan, Thomas, Fisher